UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MENES ANKH EL a/k/a/ Wendell Brown, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:17-cv-04335-WTL-TAB |
| | ) |
| KEITH BUTTS, | ) |
| | ) |
| Respondent. | ) |

**Order Discussing Petition for a Writ of Habeas Corpus**

Petitioner Menes Ankh-El[1] brings this petition for a writ of habeas corpus challenging his state conviction for burglary, forgery, and driving while suspended. Ankh-El now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, Ankh-El's petition for a writ of habeas corpus is **denied** and a certificate of appealability will not issue.

**I. Factual History**

Federal habeas review requires the Court to "presume that the state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence." *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018); *see* 28 U.S.C. § 2254(e)(1). On direct appeal, the Indiana Court of Appeals summarized the relevant facts and procedural history as follows:

> In January of 2012, Bank of America acquired a foreclosed home located at 2401 West 39th Street, Indianapolis, Marion County, Indiana (the Property), through a sheriff's sale. Because Bank of America utilized Bank of New York Mellon to service its mortgage rights, Bank of New York Mellon is also listed on the Sheriff's Deed. The Sheriff's Deed was stamped by the Marion County Assessor on February 10, 2012, and filed with the Marion County Recorder on February 13, 2012.

---

[1] The petitioner's legal name is Wendell Brown, but he calls himself Menes Ankh-El and that is how the Court will refer to him.

Shortly after procuring the Property, Bank of America engaged Integrated Asset Services "to manage, market, and sell the [P]roperty." (Tr. p. 148). Integrated Asset Services assigned the Property listing to one of its real estate brokers, Mark Forcum (Forcum). It was Forcum's responsibility to prepare, market, and sell the Property. Under ideal circumstances, the Property would have been valued between $700,000 and $800,000; however, given its condition following the foreclosure, Forcum agreed to list the Property for $325,000. Pursuant to his obligations, in addition to showing the Property to prospective buyers, Forcum paid the utility bills; he ensured that the lawn was mowed and the Property was otherwise maintained; and he conducted weekly inspections, during which he verified that the house was secure.

On April 16, 2012, Forcum drove past the Property and noticed that a red flag was hanging from the gate at the end of the driveway. The next day, he returned to the Property to conduct his weekly inspection. Upon arrival, he observed a lawn mower and mowing trailer in the driveway and initially assumed that the regular mowing crew was working on the yard. However, he grew concerned when he noticed that two men were standing on a second-floor balcony because the mowing crew would have no reason to enter the residence. When Forcum exited his vehicle, one of the men on the balcony—Ankh-El—inquired into Forcum's presence. Forcum explained that he is a real estate broker, and, in response, Ankh-El identified himself as the new owner of the Property. Knowing this could not be the case given his exclusive listing rights, Forcum returned to his vehicle and drove away from the Property while calling the Indianapolis Metropolitan Police Department (IMPD).

Forcum waited at the end of the long driveway until IMPD officers arrived. Forcum apprised the officers of his concern that there was an individual squatting on the Property, and he provided the officers with his credentials and a copy of the listing agreement which identified him as the agent responsible for selling the Property. Thereafter, the officers proceeded down the driveway and observed Ankh-El and another male standing outside. The officers identified themselves and explained the nature of their visit. Ankh-El informed the officers that he had recently purchased the property for $250,000, and he acted perplexed as to why there would be any indication that the Property was still listed for sale. When asked for proof of his ownership, Ankh-El stated that he had such documentation at another location, so he locked the doors to the house and drove away from the Property while the officers and Forcum waited for him to return. During Ankh-El's absence, one of the officers contacted the Marion County Assessor's Office, which reported that the current owner of record for the Property was Bank of New York Mellon. A short while later, Ankh-El drove up to the Property on a black Yamaha motorcycle. Ankh-El provided the officers with an identification card with his name and photograph, which identified him as a "Moorish National" and listed his birthplace as Marion County, Indiana. (State's Exh. 13). Ankh-El admitted that he had created the identification card himself and explained some of the history of the Moorish

people; specifically, he "talked about [how] the laws of [the] land [do not] apply to Moorish Nationals." (Tr. p. 216).

In addition, Ankh-El tendered a document to the officers entitled "FREEHOLD IN DEED." (State's Exh. 1). According to Ankh-El, this deed, which he had created himself, evidenced his ownership rights in the Property. The homemade deed, stated, in part:

> I, Menes Ankh-El, being in propria persona, sui juris, am a Free Moorish American National of Al Moroc (America) North, Central, South America and Adjoining Islands anciently referred to as Amexem, and I am part and parcel to the Land of my ancient Foremothers, and Fathers (Moabites/Moroccans) by birthright and inheritance as an aboriginal, indigenous and de jure natural citizen of the Continental United States of America Republic. Therefore, by the power and authority vested in me by right of birth and right of soil, retaining all substantive unalienable rights and immunities in the Organic United States of America Republic Constitution, I, Menes Ankh-El, am claiming FREEHOLD IN DEED of the abandoned and unoccupied [Property]. (State's Exh. 1). Immediately preceding his signature, the Freehold in Deed contained a declaration that "I, Menes Ankh-El, am NOT a citizen governed under Naturalization or Immigration, NOT a 14th Amendment 'Person' or 'U.S. Citizen', NOT subject to statutory, colorable law jurisdiction of the United States in the corporate monopoly of the federal, State, local, and municipal governments(s) [sic]." (State's Exh. 1). Ankh-El filed his Freehold in Deed with the Marion County Recorder on March 28, 2012.

Based on Ankh-El's self-created documents, the officers determined that he was unlawfully occupying the Property and placed him under arrest. A subsequent inspection of the Property revealed that Ankh-El, after gaining access to the house, had changed all of the locks and had mounted multiple "No Trespassing" signs. (State's Exh. 6). He had also moved a number of his personal belongings, including a set of bolt cutters, into a third floor bedroom, and his laptop was plugged into an outlet. At the jail, Ankh-El was fingerprinted, and his fingerprints matched the criminal record of Wendell Brown. A review of Wendell Brown's record from the Bureau of Motor Vehicles (BMV) revealed that his driver's license was suspended.

On August 30, 2012, the State filed an amended Information, charging Ankh-El (i.e., Wendell Brown) with Count I, burglary, a Class C felony, I.C. § 35-43-2-1 (2011); Count II, forgery, a Class C felony, I.C. § 35-43-5-2(b) (2011); Count III, theft, a Class D felony, I.C. § 35-43-4-2(a) (2011); Count IV, trespass, a Class A misdemeanor, I.C. § 35-43-2-2(a)(4) (2011); and Count V, driving while suspended, a Class A misdemeanor, I.C. § 9-24-19-2 (2012).

After the charges were filed, Ankh-El elected to represent himself and began filing a multitude of motions. Several of his motions sought dismissal based on the claim that the trial court lacked both personal and subject matter jurisdiction. Specifically, Ankh-El asserted that the trial court lacked authority under the United States Constitution to hear the case, and he further insisted that he is neither a citizen of the United States or Indiana, nor a party to a contract with the State of Indiana. Essentially, he insisted that as a "Private Moorish American National Man," he is not subject to the power of the courts or the laws of this state. (Appellant's App. p. 28). Ankh-El also sought dismissal due to lack of evidence, arguing, in part, that he was rightfully entitled to claim the Property under the doctrine of adverse possession. Additionally, Ankh-El claimed that the trial court violated his right to assistance of counsel and the Vienna Convention by refusing to allow his "Consuls" to address the trial court on his behalf. (Appellant's App. p. 27). He also accused the trial court of committing perjury, and he alleged that the trial court had exhibited extreme prejudice by failing to rule on motions and by preventing the State from responding to his motions. In a few motions, Ankh-El alleged that he was entitled to a default judgment because the trial court and the State had failed to respond to his various motions regarding the trial court's lack of jurisdiction, as well as other accusations by Ankh-El against the State and trial court, including treason, fraud and "[b]arratry." (Appellant's App. p. 30). Furthermore, Ankh El challenged the validity of the charging Information, positing that the Information does not clearly identify the owner of the Property and that it includes other vague references. Ankh-El additionally argued that the Information failed to properly identify him because he has "a Nationality which is Moorish American [and] for the [I]nformation to designate [him] as a black male and as WENDELL BROWN© [sic] is denationalization and violation of the 13th Amendment prohibitions of slavery and involuntary servitude." (Appellant's App. p. 42). While the trial court denied several of these motions, the record is unclear as to whether it actually issued rulings as to the rest.

On July 24, 2013, the trial court conducted a jury trial. At the close of the evidence, the jury returned a guilty verdict on all Counts. On August 2, 2013, the trial court held a sentencing hearing. The trial court merged Count III, theft as a Class D felony, and Count IV, trespass as a Class A misdemeanor, into Count I and entered a judgment of conviction on Count I, burglary as a Class C felony; Count II, forgery as a Class C felony; and Count V, driving while suspended as a Class A misdemeanor. For Count I and Count II, the trial court imposed concurrent sentences of four years, with two years executed through Community Corrections and two years suspended with one year of probation for each Count. As to Count V, the trial court ordered Ankh-El to serve a one-year term in Community Corrections, concurrent with his sentence for Counts I and II.

On November 1, 2013, Ankh-El filed his Notice of Appeal. On May 12, 2014, this court dismissed Ankh-El's appeal with prejudice because it was not timely filed. On June 2, 2014, Ankh-El filed a petition for rehearing, which we denied on June 23, 2014. On August 26, 2014, Ankh-El filed a Demand for Acceptance of Belated

Petition to Transfer, which the Indiana Supreme Court granted on September 12, 2014. On May 26, 2015, the supreme court granted Ankh-El's petition to transfer. In its order, the supreme court noted that Ankh El had filed a response with our court to show cause why his appeal should not have been dismissed due to an untimely Notice of Appeal, but the response was incorrectly filed under a different appeal initiated by Ankh-El and, therefore, was likely not reviewed. Moreover, Ankh-El submitted an order from the trial court that extended the time for filing his Notice of Appeal to November 2, 2013, likely in accordance with Indiana Trial Rule 72(E); thus, his November 1, 2013 Notice of Appeal was actually timely. Accordingly, the supreme court vacated our dismissal of Ankh-El's appeal and our denial of his petition for rehearing and remanded the case to our court for further proceedings.

On direct appeal of the convictions at issue in this case, Ankh-El raised the following claims: (1) whether the trial court had subject matter jurisdiction over this case; (2) whether the trial court denied his the right to counsel in violation of the Sixth Amendment to the United States Constitution; (3) whether the State presented sufficient evidence to support the convictions; (4) whether the charging information was defective; and (5) whether the trial court committed fundamental error by exhibiting prejudice. On November 22, 2016, The Indiana Court of Appeals affirmed Ankh-El's convictions. Ankh-El sought transfer to the Indiana Supreme Court where he argued: (1) that the Indiana Court of Appeals failed to properly order transcripts, a replacement for an alleged stolen deposition, and complete replacement for trial court clerk's record; (2) the Indiana Court of Appeals ignored evidence of fundamental error; (3) the Indiana Court of Appeals failed to consider any of Petitioner's jurisdictional arguments; (4) the evidence was insufficient; and (5) whether the charging information was defective. The Indiana Supreme Court denied transfer on June 1, 2017.

Ankh-El filed his petition for a writ of habeas corpus on November 20, 2017. The respondent field a Return to Order to Show Cause on February 23, 2018, arguing that Ankh-El had filed a mixed petition which included unexhausted claims, and therefore, the petition should be dismissed without prejudice. On December 7, 2018, the Court issued dismissing Ground Three of

the petition, on Ankh-El's request, and ordered the respondent to address Ankh-El's remaining claims. The respondent has done so and Ankh-El has replied.

## II. Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") directs how the Court must consider petitions for habeas relief under § 2254. "In considering habeas corpus petitions challenging state court convictions, [the Court's] review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (citation and quotation marks omitted). "The standards in 28 U.S.C. § 2254(d) were designed to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law." *Id.* (citation and quotation marks omitted).

A federal habeas court cannot grant relief unless the state court's adjudication of a federal claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey*, 877 F.3d at 302. "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts

6

rejected a state prisoner's federal claims, and to give appropriate deference to that decision[.]" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (citation and quotation marks omitted). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Id.* "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "The issue is not whether federal judges agree with the state court decision or even whether the state court decision was correct. The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302. "Put another way, [the Court] ask[s] whether the state court decision 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103). "The bounds of a reasonable application depend on the nature of the relevant rule. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Schmidt v. Foster*, 911 F.3d 469, 477 (7th Cir. 2018) (en banc) (citation and quotation marks omitted).

### III. Discussion

In support of his petition for a writ of habeas corpus, Ankh-El argues that (1) there was no probable cause for the arrest or charges; (2) the probable cause affidavit contained false statements

7

or omissions of fact; (3) the original cause was disposed of and re-filed under the same cause without notification allegedly causing prejudice to Petitioner; (4)-(5) the evidence was insufficient to support his convictions; (6) the charging information was defective; (7) he was denied counsel of choice; (8) the Indiana Court of Appeals properly assembled the appellate record; and (9) and the trial court was lost jurisdiction through its failure "to direct the prosecutor to prove its jurisdiction." Ground three has been dismissed. Dkt. 35. Ankh-El's remaining claims are discussed below.

A. *Grounds One, Two, Four, and Five*

In Grounds One and Two, Ankh-El contends that there was no probable cause for his arrest and that the probable cause affidavit contained false statements and omissions of fact. In Grounds Four and Five, he asserts that there was no felonious intent to support the burglary charge, there was no intent to defraud, and no evidence that he was driving. In his appeal, the Indiana Court of Appeals treated these arguments as challenges to the sufficiency of the evidence. Dkt. 13-8, at 15-16. The respondent thus argues that the Indiana Court of Appeals properly applied clearly established federal law in holding that Ankh-El's convictions were supported by sufficient evidence.

As the Indiana Court of Appeals explained, Ankh-El's challenges to probable cause are properly understood as challenges to the sufficiency of the evidence. Ankh-El contends that his probable cause and sufficiency of the evidence claims are separate, that there was no probable cause to arrest him because the Property belonged to him, because he did not commit forgery, and because there was no evidence that he was driving. Regardless of how his claims are described, these claims are based on his contention that he committed no crime. These claims will therefore be considered as challenges to the sufficiency of the evidence.

Insufficiency-of-the-evidence claims are governed by the "rigorous" standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979): "evidence, viewed in the light most favorable to the State, is sufficient to support a conviction so long as any rational trier of fact could find the essential elements of the offense to have been proved beyond a reasonable doubt." *Jones v. Butler*, 778 F.3d 575, 581 (7th Cir. 2015); *see Monroe v. Davis*, 712 F.3d 1106, 1118-19 (7th Cir. 2013). Because the Court considers "this claim on collateral review rather than direct appeal, the [AEDPA] imposes an additional layer of defense onto this inquiry: [the Court] may grant relief on this claim only if the [state court] applied the *Jackson* standard unreasonably to the facts of [the petitioner's] case." *Jones*, 778 F.3d at 581-82. Therefore, "[f]ederal review of these claims . . . turns on whether the state court provided fair process and engaged in reasoned, good-faith decisionmaking when applying *Jackson*'s 'no rational trier of fact' test." *Gomez v. Acevedo*, 106 F.3d 192, 199 (7th Cir. 1999).

The Indiana Court of Appeals set forth the following standard for reviewing Ankh-El's sufficiency challenges:

> When reviewing a claim of insufficient evidence, our court will only consider the evidence that is most favorable to the verdict, along with any reasonable inferences derived from that evidence. We do not reweigh evidence or assess the credibility of witnesses. If a reasonable finder of fact could determine from the evidence that the defendant was guilty beyond a reasonable doubt, then we will uphold the verdict.

Dkt. 13-8, pg. 15. The Indiana Court of Appeals properly set forth the sufficiency standard enunciated in *Jackson*. The sufficiency of the evidence supporting each of Ankh-El's convictions will be discussed in turn.

1. *Burglary*

To convict Ankh-El of burglary, a class C felony, the State was required to show that he broke and entered the building or structure belonging to another person with the intent of depriving

9

the owner of the value or use of the building. Ind. Code § 35-43-2-1 (2012). The State presented evidence that Ankh-El broke into a locked, unoccupied house, which was owned by Bank of America (Tr. 148-49, 157, 160, 164-66). Ankh-El did so in order to move into the house with his personal belongings, including a wireless router he had placed facing an open window, and a computer that had been connected to the house's active electrical service (Tr. 160, 162, 217, 234-35; Exs. 7-9). The electrical service was being paid for by Forcum on behalf of the bank (Tr. 149, 159). In Indiana, electricity is property which may be the subject of theft. *See Helvey v. Wabash Cty. REMC*, 151 Ind. App. 176, 178, 278 N.E.2d 608, 610 (1972). Moreover, Ankh-El admitted to investigating officers that his actions were committed because he intended to take and use the house as his personal residence (Tr. 210-11, 232).

In affirming his conviction, the Indiana Court of Appeals pointed out that Ankh-El conceded that the Property was owned by another person but argued that there is no evidence that he had the intent to commit a felony on the Property. The court held that "the evidence establishes that Ankh-El broke into the house with the intent to use the house as his personal residence, thereby depriving the Property's rightful owner(s) of its value or use." Dkt. 13-8 at 18. He hung a flag on the front gate, changed the locks, posted multiple signs warning against trespassing, and moved a number of his personal belongings into the residence and garage, including clothing, a lawnmower, and a laptop. *Id.* Therefore, the evidence is sufficient, as the Indiana Court of Appeals held, that he possessed the requisite intent to steal the property from its rightful owner thereby committing burglary. *Id.* at 17-18.

2. *Forgery*

To convict Ankh-El of forgery, a Class C felony, the State was required to prove that he made or uttered his "Freehold in Deed" in such a manner that it purported to have been made by

the owner of the house when, in fact, the owner had not given authority. Ind. Code § 35-43-5-2 (2012). In affirming, the forgery conviction, the Indiana Court of Appeals held:

> Ankh-El created and provided the IMPD officers with a fictitious deed, which purported to give him ownership rights to the Property. In conjunction with tendering his Freehold in Deed to the officers, [Petitioner] claimed that he had recently purchased the Property for $250,000; thus, he relied on the deed as proof of his lawful ownership in order to deceive the officers. We find that this satisfies the forgery statute and therefore affirm his conviction.

Dkt. 13-8, at 21. This Court agrees that the evidence was sufficient to support Ankh-El's forgery conviction.

### 3. *Driving while suspended*

Finally, Ankh-El challenges his conviction for driving while suspended. He contends that there is no evidence that he was driving or that he knew his license was suspended. He further states that it is his belief that he does not have a driver's license.

The respondent argues that Ankh-El did not properly preserve this argument for habeas review. In the Indiana Court of Appeals, Ankh-El argued that he is not required to have a driver's license. Dkt. 13-5. In his petition to transfer to the Indiana Supreme Court, he argued that there is no evidence that he had a license to suspend. Dkt. 13-3.

"Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, is the duty to fairly present his federal claims to the state courts." *King v. Pfister*, 834 F.3d 808, 815 (7th Cir. 2016) (quoting *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004) (in turn citing 28 U.S.C. § 2254(b)(1)(A)). To meet this requirement, a petitioner "must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* at 1025-26. A federal claim is not fairly presented unless the petitioner "put[s] forward operative facts and controlling legal principles." *Simpson v. Battaglia*, 458 F.3d 585, 594 (7th Cir. 2006) (citation and quotation marks omitted).

11

Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992).

Ankh-El admits that he did not raise his argument that he did not know that his license was suspended to the Indiana Court of Appeals, but that he argued in the Indiana Supreme Court that he did not know his license was suspended. This argument is therefore procedurally defaulted. Ankh-El argues, however, that the Court can still adjudicate the issue that was raised in both courts – his argument that he is not required to have a drivers' license because he has a fundamental right to travel. Considering this argument, the Indiana Court of Appeals held that "neither this court, nor our supreme court, nor the United States Supreme Court has ever held that there exists a fundamental right to drive a motor vehicle." Dkt. 13-8. This is not an unreasonable application of constitutional law. *See Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 903, (1986); *Dixon v. Love*, 431 U.S. 105, 112-16 (1977) (state court was permitted to summarily suspend or revoke the license of a motorist who had been repeatedly convicted of traffic offenses).

B. *Ground Six -- Charging Information*

Ankh-El next contends that the charging information was defective. He contends that the charging information failed to properly identify him, failed to allege jurisdiction, and that the charges of burglary and forgery were vague and failed to properly describe the victims or the offense.

The respondent argues that this challenge is based only on state law and is therefore unreviewable in this habeas petition. To the extent that Ankh-El contends that the charging information failed to comply with Indiana statute, the respondent is correct. Such a challenge will not be considered because "[e]rrors of state law in and of themselves are not cognizable on habeas

review." *Samuel v. Frank*, 525 F.3d 566, 574 (7th Cir. 2008) (citation and quotation marks omitted). But Ankh-El also appears to argue that the defects in the charging information violated his due process rights. Specifically, in reply in support of his habeas petition, Ankh-El appears to argue that the alleged defects in the charging information violated his due process rights. But he did not present this argument to the Indiana Court of Appeals or even in his habeas petition and any such argument is therefore not exhausted. *See King v. Pfister*, 834 F.3d 808, 815 (7th Cir. 2016).

C. *Ground Seven -- Right to Retain Counsel of his Choice*

Ankh-El also argues that he was denied the right to the assistance of counsel of his choice.

The Indiana Court of Appeals found that Ankh-El waived this claim by failing to adhere to the Indiana Appellate Rules. Dkt. 13-8, at 12-13. Specifically, the Indiana Court of Appeals held:

> We note that the record is devoid of any proceedings regarding Ankh-El's request to be represented by Moorish Consuls and the trial court's denial thereof. At some point, Ankh-El elected to proceed pro se, and the trial court appointed standby counsel to assist him with procedural matters during the trial. As the State points out, Ankh-El has waived his argument for appeal by failing to cite to the record. See App. R. 46(A)(8)(a).

*Id.* The respondent argues because the Indiana Court of Appeals provided an independent and adequate state law resolution of this claim, it is procedurally defaulted. Procedural default can occur if the state court rejects a federal claim based on a state procedural rule "that is both independent of the federal question and adequate to support the judgment." *Clemons v. Pfister*, 845 F.3d 816, 819 (7th Cir. 2017) (internal citations omitted). Because the Indiana Court of Appeals relied on an independent and adequate state law ground for rejecting Ankh-El's claim based on his right to counsel, it is procedurally defaulted and this Court need not address it.

D. *Ground Eight -- Appellate Record*

13

Ankh-El also argues that the Indiana Court of Appeals hindered his appeal by refusing to order the trial court to prepare the entire clerk's record and the transcripts of the pretrial proceedings. Because Ankh-El did not raise a claim that his rights were violated through the failure to order the complete record of his pre-trial proceedings, this claim is defaulted.

E. *Ground Nine -- Trial Court Jurisdiction*

Ankh-El also argues that the trial court did not have jurisdiction over him. The respondent argues that this jurisdictional argument is solely a state law claim. *See Heath v. Alabama*, 474 U.S. 82, 89 (1985) (It is well established "that the States are separate sovereigns with respect to the Federal Government because each State's power to prosecute is derived from its own inherent sovereignty, not from the Federal Government"). Accordingly, because this argument is not based on federal law it is not cognizable on federal collateral review. *Samuel*, 525 F.3d at 574. Moreover, the Court notes that Ankh-El argued in the Indiana Court of Appeals that his is "a member of the 'sovereignty' and is 'not bound by general words in statutes." Dkt. 13-8, 10. But the Seventh Circuit has "repeatedly rejected" theories of individual sovereignty and has instructed that such theories should be rejected summarily, however they are presented. *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011)(citing cases, including *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990) (describing defendant's proposed "sovereign citizen" defense as having "no conceivable validity in American law")). "Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' or a 'flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts." *Id*.

## V. Conclusion

Ankh-El's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **denied**. His motion for judgment as a matter of law, dkt. 43, and his motion for confidential transcripts, dkt. 55, are both **denied**. A certificate of appealability shall not issue.

Final Judgment in accordance with this decision shall issue.

**IT IS SO ORDERED.**

Date: 6/27/2019

Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Distribution:

MENES ANKH EL
233632 Wendell Brown
a/k/a Wendell Brown
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Andrew A. Kobe
INDIANA ATTORNEY GENERAL
andrew.kobe@atg.in.gov